UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LEVIATHAN OFFSHORE, LLC** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 24-938** |
| | * | |
| **BAKER MARINE SOLUTIONS, LLC** | * | **SECTION "L" (4)** |

## ORDER & REASONS

Before the Court is Defendant Baker Marine Solutions, LLC's Motion to Dismiss Pursuant to Rule 12(b)(6). R. Doc. 5. Plaintiff Leviathan Offshore, LLC opposes the motion. R. Doc. 6. Baker Marine replied. R. Doc. 7. Considering the record, the parties' briefing, and the applicable law, the Court now rules as follows.

### I. BACKGROUND

Plaintiff Leviathan Offshore, LLC ("Leviathan") sued Baker Marine Solutions, LLC ("Baker Marine") alleging breach of contract and violations of the Louisiana Unfair Trade Practices Act ("LUTPA") La. R.S. § 51:1405 *et seq*. R. Doc. 1 at 9-10. Leviathan is an offshore diving company that provides inspection, installation, and repair services on marine structures and equipment. *Id.* at 2. Leviathan contracted with W&T Offshore to inspect three of W&T's offshore platforms. *Id.* at 3. Likewise, Leviathan contracted with Petrofac to inspect ten of Petrofac's offshore platforms. *Id.* at 4. Leviathan, in turn, contacted with Baker Marine wherein Baker Marine would perform remote operated vehicle services for these two inspection projects. *Id*. Leviathan alleges that under the terms of these contracts, Baker Marine was required to produce written inspection reports and data logs including video footage, stills, and other information discovered in the inspection. *Id.* at 4, 6.

1

Leviathan alleges that Baker Marine successfully inspected two of the three platforms included in the W&T Offshore project. *Id.* at 5. However, it alleges that Baker Marine failed to complete the third inspection because its crew was not properly trained. *Id.* Baker Marine then attempted to inspect the Petrofac platforms. *Id.* However, its remote operated vehicle equipment repeatedly failed, and Baker Marine ultimately did not complete any successful inspections of Petrofac's ten platforms. *Id.* Because of this failure, Leviathan alleges that Petrofac dismissed Leviathan from the Petrofac project entirely. *Id.* at 6.

Leviathan alleges that Baker Marine submitted invoices for all three W&T inspections as well as invoices totaling $48,800.99 for the attempted inspections of the Petrofac project. *Id.* Leviathan maintains that, pursuant to its contracts, it was not required to pay for failed inspections. *Id.* Accordingly, it offered to pay for the two complete W&T inspections and requested the corresponding reports. *Id.* Leviathan alleges that Baker Marine submitted the materials for the first inspection but refused to submit the reports for the second inspection. *Id.* at 7. Leviathan maintains that Baker Marine asserted that it would only provide the materials if Leviathan paid it for the invoices related to the Petrofac project. *Id.* Thus, Leviathan alleges that Baker Marine "deliberately and intentionally withheld the required information" and "attempted to coerce Leviathan into paying for goods and services that Leviathan never received." *Id.* It avers that Baker Marine "attempted to back Leviathan into a corner, where Leviathan would risk losing its contract with W&T if Leviathan could not provide its client with Baker Marine's inspection report." *Id.*

Leviathan alleges that it refused this demand to pay for the Petrofac invoices, arguing that Baker Marine hadn't performed the inspections or produced any reports for that project. *Id.* It communicated to Baker Marine that it was willing to pay for the completed inspections, but that

it was not obligated to pay for failed inspections. *Id.* Nevertheless, Leviathan alleges that Baker Marine still refused to hand over the report for the second W&T inspection. *Id.* at 8. Accordingly, Leviathan had to re-do the inspection using a different remote operated vehicle services company so that it could fulfill its contract with W&T. *Id.*

Leviathan brought suit, alleging that Baker Marine had breached its contracts as to both the W&T and the Petrofac projects. R. Doc. 1. It also alleges violations of LUTPA which prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* at 10. Leviathan claims that Baker Marine's refusal to hand over the reports for the second W&T inspection until Leviathan paid for incomplete work on the Petrofac project constituted unlawful coercion under LUTPA. *Id.* at 11. Pursuant to this statute, Leviathan seeks attorneys' fees as well as punitive damages in an amount "three times the actual damages sustained." *Id.* at 12.

## II.     PRESENT MOTION

Baker Marine filed a 12(b)(6) motion (1) to dismiss Leviathan's LUTPA claims entirely or (2) in the alternative, to dismiss Leviathan's claim for attorneys' fees and punitive damages under LUTPA. R. Doc. 5.

First, Baker Marine alleges that Leviathan has not plead sufficient facts to demonstrate a violation of LUTPA. R. Doc. 5-1 at 13. It avers that Leviathan is merely trying to "bolster its unsubstantiated breach of contract allegations with threadbare recitations of non-viable LUTPA claims." *Id.* at 13-14. Baker Marine points out that Courts have held that "the range of prohibited practices under LUTPA is extremely narrow" and "only egregious actions involving fraud, misrepresentation, deception, or other unethical conduct will be sanctioned." *Id.* at 14 (quoting *Quality Env't Processes Inc. v. I.P. Petroleum Co.*, 2013-1582, p. 20 (La. 5/7/14), 144 So .3d 1011, 1025-26. Baker Marine cites *Target Construction, Inc. v. Baker Pile Driving Site Work,*

*LLC*, where this Court held that plaintiff did not sufficiently plead a LUTPA claim where it failed to assert that the defendant's alleged misrepresentations were intentional. *Id.* at 15 (citing 2012 WL 5878855 at *4 (E.D. La. Nov. 20, 2012). It contends that here, similarly, Leviathan fails to meet the pleading standard because it does not allege "any egregious, deceptive, dishonest, or deceptive acts" by Baker Marine. *Id.* at 16.

Furthermore, Baker Marine argues that courts within the Fifth Circuit have held that LUTPA violations are predominantly cognizable where the parties are in an "employee-employer relationship" or are "competitors." *Id.* (citing *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002)). Baker Marine notes that the parties were not "competitors" or in an employment relationship; they merely entered into a contract. *Id.* at 16-17. Thus, Baker Marine contends that Plaintiff's LUTPA claims are unavailing and should be dismissed.

Second, Baker Marine contends that Leviathan's LUTPA claims for attorneys' fees and punitive damages are preempted by general maritime law. *Id.* at 9. It notes that under general maritime law, attorneys' fees are generally not available except in narrow circumstances. *Id.* at 10. Furthermore, punitive damages are only available where the defendant's behavior was "so egregious as to constitute gross negligence, recklessness, or callous disregard for the rights of others." *Id.* at 11. Baker Marine represents that this standard is "fundamentally different from, and thus conflicting and preemptive of, the LUTPA treble/punitive damages standard" which requires that the unfair or deceptive practice was "knowingly used." *Id.* at 10-11.

In support of this argument, Baker Marine notes that courts within the Fifth Circuit have held that maritime law preempts a Louisiana "open account statutes" that provided a different standard for obtaining attorneys' fees in applicable cases. *Id.* It argues that this context is analogous to the present case. *Id.* In support of its argument that general maritime law preempts

4

the punitive damages provisions of LUTPA, Baker Marine cites various cases where courts held that similar state unfair trade practice statutes were preempted by the general maritime law as to their punitive damages provisions. *Id.* at 11-12. For example, it cites *Ingram Barge Co. v. Trifinery, Inc.* where the court held that the general maritime law preempted the Texas Unfair Trade Practices Act's provision awarding attorneys' fees and punitive damages where the deceptive conduct was committed "knowingly." *Id.* at 11 (citing 1990 WL 303913 (Tex. Dist. Nov. 29, 1990)).

Leviathan opposes the Motion, arguing that is has sufficiently plead a viable LUTPA claim and that its requests for attorneys' fees and punitive damages are not preempted by general maritime law. R. Doc. 6. First, as to the sufficiency of the pleadings, Leviathan notes that it alleges in its complaint that Baker Marine "deliberately and intentionally withheld the reports . . . in an attempt to force Leviathan to pay" and that it "attempted to coerce Leviathan into paying for goods and services that Leviathan never received." *Id.* at 10. It further alleges that this was a wrongful attempt to "back Leviathan into a corner, where Leviatahn would risk losing its contract with W&T." *Id.* Thus, Leviathan contends that it has adequately plead that Baker Marine engaged in acts of coercion cognizable under LUTPA. As to Baker Marine's argument that LUTPA only applies where the parties are competitors or in an employment relationship, Leviathan notes that in *Cheramie Services Inc. v. Shell Deepwater Production, Inc.*, the Louisiana Supreme Court "expressly rejected any requirement that LUTPA claims allege injury to business competitors and consumers." *Id.* at 17 (citing 2009-1633, (La. 4/23/10), 35 So. 3d 1053, 1057).

5

Second, Leviathan avers that its LUTPA claims for attorneys' fees and punitive damages are not preempted by general maritime law. The LUTPA claims, Leviathan alleges, sound in tort, not in contract. *Id.* at 18. Accordingly, even if general maritime law applies, punitive damages would be available because general maritime law only limits punitive damages in contract, not in tort. *Id.* at 19. Moreover, Leviathan claims that general maritime law does not apply to its LUTPA claims at all. *Id.* It contends that the claims arise out of the land-based acts of coercion perpetrated by Baker Marine's representatives after the termination of the maritime contracts and issues. *Id.* Thus, it avers that the "location test" and "connection test" for determining whether a claim is maritime yield the conclusion that this claim is not governed by general maritime law. *Id.* at 19-20. In support of its position, Leviathan cites *Crowly Liner Services v. Transtainer Corp.*, where the court held that the Florida Deceptive and Unfair Trade Practices Act counterclaim at issue was not governed by maritime law because it was based on misrepresentations about maritime shipping costs made by a company representative from a land-based office. *Id.* at 21-22 (citing 2007 WL 433352 (S.D. Fla. Feb. 6, 2007)). Finally, Leviathan alleges that the issue of attorneys' fees and punitive damages is not appropriately decided on a 12(b)(6) motion at such an early stage of the case. *Id.* at 20-21.

In its reply, Baker Marine points out that Leviathan designated the matter as "an admiralty and maritime claim within the meaning of Rule 9(h)" in its complaint. R. Doc. 7. at 1. It also contends that the LUTPA claims are "inextricably bound up with the maritime contract," thus requiring the application of maritime law. *Id.* at 4. Finally, it avers that it does not matter whether maritime contract law or maritime tort law applies; the punitive damages standard of either body of law would preempt the LUTPA standard. *Id.*

## III. APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ' state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV. DISCUSSION

Baker Marine avers that Plaintiff has not pled sufficient facts to state a claim for violations of the LUTPA. The Court disagrees.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" and affords a private right of action to any person who suffers ascertainable loss as a result of such conduct. La. R.S. 51:1405(A). To prevail on a claim under LUTPA, a plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting *Omnitech Intern., Inc. v. Clorox Co.*,

7

11 F.3d 1316, 1332 (5th Cir. 1994)). What constitutes an unfair trade practice is determined on a case-by-case basis. *Cheramie*, 35 So. 3d at 1059.

Louisiana courts have restrictively confined unfair practices to those which "offend[] established public policy" and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Id.* LUTPA does not encompass sound business practices, the exercise of permissible business judgment, or free enterprise transactions, and there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Id.* (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419 (5th Cir. 1993)).

This Court has previously held that allegations of unfair coercion can constitute a viable LUTPA claim. *See D.H. Griffin Wrecking Co. v. 1031 Canal Development, LLC*, 463 F. Supp. 3d 713, 724 (E.D. La. 2020) (holding that the plaintiff "stated a LUTPA claim based on coercion" where it alleged that the defendant lobbied the city to force the plaintiff to award the defendant a certain contract, misrepresented its intentions during contract negotiations, and filed a lawsuit to escape its contractual obligations). Here, Leviathan alleges that Baker Marine "deliberately and intentionally withheld" reports it had agreed to provide and "attempted to coerce Leviathan into paying for goods and services that Leviathan never received." R. Doc. 1 at 6. Further, Leviathan claims that Baker Marine "attempted to back Leviathan into a corner, where Leviathan would risk losing its contract with W&T if Leviathan could not provide its client with Baker Marine's inspection report." *Id.* Such allegations state a colorable claim of unlawful coercion.

Baker Marine's arguments in opposition are unpersuasive. First, it cites *Target Construction*—where the Court dismissed a LUTPA claim on the pleadings—as instructive. 2012 WL 5878855 at *4. However, in that case, the Court dismissed the claim because Plaintiff

8

had failed to allege that any of defendant's behavior was "intentional," as required to meet the standard for egregious behavior in LUTPA. *Id.* Here, however, Leviathan has sufficiently alleged that Baker Marine "deliberately and intentionally withheld" reports it was obliged to turn over in a coercive attempt to make Leviathan pay for unperformed services. R. Doc. 1 at 6. Thus, *Target Construction* is inapposite.

Baker Marine also argues that the claim should be dismissed because federal courts in this circuit have previously observed that "Louisiana law suggests that LUTPA protects consumers and business competitors only, and the 'real thrust' of LUTPA is to deter injury to competition." *Landreneau v. Fleet Fin. Grp.*, 197 F. Supp. 2d 551, 557 (M.D. La. 2002); *see also Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993). However, this case law does not survive the Louisiana Supreme Court's holding in *Cheramie Services*, 2009-1633, (La. 4/23/10), 35 So. 3d 1053, 1057. There, the court expressly addressed this argument and held that "LUTPA grants a right of action to any person, natural or juridical, who suffers an ascertainable loss as a result of another person's use of unfair methods of competition and unfair or deceptive acts . . . although business consumers and competitors are included in the group afforded this private right of action, they are not its exclusive members." *Id.* Overall, the Court finds that, in the present case, Leviathan has adequately pled a LUTPA claim.

Next, the parties dispute whether general maritime law preempts Plaintiff's claim for attorneys' fees and punitive damages pursuant to LUTPA. The Court declines to decide this issue at the motion to dismiss stage. *See Reel Pipe, LLC v. USA Comserv, Inc.*, No. CV 18-6646, 2019 WL 127055, at *3 (E.D. La. Jan. 8, 2019) ("The Court will determine whether LUTPA's attorneys' fees provision is preempted by the general maritime law if this claim succeeds on the merits."); *see also Hunter Kitchen & Bath, LLC v. R.D. Henry & Co.*, No. CV 19-5979, 2020

9

WL 1028047, at *6 (E.D. Pa. Mar. 3, 2020) ("[W]e need not consider on a motion to dismiss whether Plaintiffs may ultimately be entitled to attorneys' fees.").

###    V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Baker Marine's Motion to Dismiss, R. Doc. 5, is **DENIED.**

New Orleans, Louisiana, this 29th day of July, 2024.

_____
HONORABLE ELDON E. FALLON
UNITED STATES DISTRICT JUDGE